**STATE OF OHIO, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants.**

**No. C–1–86–0217.**

United States District Court, S.D. Ohio, W.D.

March 18, 1988.

Jack A. Van Kley and Monica L. Fries, Asst. Attys. Gen., Environmental Enforcement Section, Columbus, Ohio, for plaintiff.

Wm. Hawkins and James R. Adams, Cincinnati, Ohio, for NLO, Inc. and NL Industries, Inc.

Donetta Wiethe, Asst. U.S. Atty., Cincinnati, Ohio, J. Steven Rogers, U.S. Dept. of Justice, Land & Natural Resources Div., Environmental Defense Section, and Gregory Fess, Office of Gen. Counsel, U.S. Dept. of Energy, Washington, D.C., for U.S. Dept. of Energy and John S. Herrington.

## ORDER DENYING MOTION TO DISMISS

SPIEGEL, District Judge.

This matter is before the Court for consideration of defendant's motion to dismiss and motion to stay (doc. 20). Plaintiff has responded in opposition to the motions (doc. 32).

On March 11, 1986, plaintiff State of Ohio filed this action for injunctive relief, damages, civil penalties and declaratory relief against the United States Department of Energy, the Secretary of Energy and their contractors at the Feed Materials Production Center (FMPC), NLO, Inc. (NLO), and NL Industries, Inc. (NL Industries). Plaintiff alleges that defendants have improperly disposed of hazardous wastes, have released radioactive materials into the air, water and soil, and have polluted surface water and ground water with chemical and radioactive contaminants. The State substantially bases its claims on the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA or Superfund), 42 U.S.C. §§ 9601 *et seq.*, the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901 *et seq.*, the Federal Water Pollution Control Act (Clean Water Act or CWA), 33 U.S.C. §§ 1251 *et seq.*, the Ohio Solid & Hazardous Waste Control Act, Ohio Rev. Code Ann. ch. 3734 (Baldwin 1982) and the Ohio Water Pollution Control Act, Ohio Rev. Code Ann. ch. 6111 (Baldwin 1982).

The DOE filed its motion to dismiss and motion to stay on November 7, 1986, seeking (1) to dismiss Count I of the Complaint (for the recovery of response costs under CERCLA); (2) a stay of Count II (for natural resources damages under CERCLA); (3) to dismiss Counts III through XVI (for injunctive relief and civil penalties under RCRA and the Ohio Solid & Hazardous Waste Control Act); and (4) to dismiss Counts XVII through XXVI (for injunctive relief and civil penalties under CWA and the Ohio Water Pollution Control Act). This motion came on for hearing on January 28, 1988. At that time, the parties informed the Court that Count I has been withdrawn and that they agree to stay Count II pending completion of a Remedial Investigation/Feasibility Study (RI/FS). Counts III–XVI and XVII–XXVI have been withdrawn to the extent they seek injunctive relief under the aforementioned Acts. Thus, only the claims for civil penalties are before the Court. The DOE moves to dismiss those claims pursuant to Rules

12(b)(1) and 12(b)(6), Fed.R.Civ.P., on grounds that the claims are barred by the doctrine of sovereign immunity. Plaintiff argues that the government has waived its sovereign immunity with respect to these claims.

The issues to be determined are whether this Court has the authority to impose civil penalties on the Department of Energy and whether the State could recover such penalties.

## I.

The United States may not be sued absent its consent. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Waivers of immunity are strictly construed and are not "enlarged ... beyond what the language [of the pertinent statutes] requires." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983) (quoting *Eastern Transportation Co. v. United States,* 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927)).

## II.

Section 6001 of the RCRA provides in part that:

[e]ach department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local *requirements,* both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting

control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. Neither the United States, nor any agent, employee, or officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of any such injunctive relief.

42 U.S.C. § 6961 (emphasis added).

Section 6001 was enacted in its present form in response to the Supreme Court's decisions in *Hancock v. Train,* 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) and *EPA v. California ex rel. State Water Resources Control Board,* 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976). These cases held that the Clean Air Act and the Federal Water Pollution Control Act did not clearly and unambiguously demonstrate Congressional intent to subject federal facilities to state permit requirements. In refusing to expose federal installations to state control, the Court specifically distinguished substantive requirements respecting control and abatement of pollution from procedural (administrative and enforcement) requirements. *Hancock,* 426 U.S. at 183, 185, 96 S.Ct. at 2014, 2015; *State Water Resources Control Board,* 426 U.S. at 215, 96 S.Ct. at 2029.

Congress enacted the new RCRA three months after the Supreme Court announced *Hancock* and *State Water Resources Control Board,* and amended the Clean Air Act, the Clean Water Act and the Safe Drinking Water Act during the following year.[1] In each environmental statute, Congress used language referring to "all" state requirements, both substantive and procedural.

## III.

Although there is no reference to civil penalties in section 6001, plaintiff argues

---

[1] The CAA and the SDWA amendments, enacted after the RCRA and before the CWA, have been held to contain express waivers of sovereign immunity as to civil penalties. 42 U.S.C. § 7418(a); 42 U.S.C. § 300j–6(a); *State of Alabama ex rel. Graddick v. Veterans Administration,* 648 F.Supp. 1208 (M.D.Ala.1986); *State of Ohio ex rel. Celebrezze v. United States Dep't of*

*the Air Force,* —— F.Supp. ——, No. C–2–86–0175 (S.D.Ohio Mar. 9, 1987) (unpublished). The CWA waives immunity to civil penalties only to the extent that they arise under Federal law or are imposed by a State or local court to enforce an order or the process of such court. 33 U.S.C. § 1323(a). The RCRA does not contain direct language reflecting either approach.

that the language subjecting each department to all federal and state "requirements" is sufficient to encompass civil penalties. Plaintiff submits that the parenthetical list following this language is not inclusive, but illustrative. Plaintiff also argues that "sanctions" includes civil penalties. In addition, the State asserts that RCRA § 7002 authorizes the assessment of civil penalties against federal facilities in the context of citizen suits. Section 7002(a) provides in pertinent part that:

[e]xcept as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) *against any person (including (a) the United States,* and (b) any other governmental instrumentality or agency ...) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) *against any person, including the United States* and any other governmental instrumentality or agency ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment....

.    .    .    .    .

The district court shall have jurisdiction ... to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste. referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both ... as the case may be, and *to apply any appropriate civil penalties under section 6928(a) and (g) of this title.*

42 U.S.C. § 6972(a) (emphasis added).

Plaintiff also refers to the legislative history of the 1984 RCRA Amendments to support its contention that section 7002 renders the government liable for civil penalties. Senate Report No. 284, 98th Cong., 1st Sess. 44 (1983) states in part that:

[t]he duty to compile and submit the inventory to the Administrator is a mandatory, nondiscretionary duty. Should an agency fail to carry out the inventory requirements, section 3015 requires the Administrator to compile the inventory. The Administrator's duty is also nondiscretionary. Either a noncomplying agency of [sic] the Administrator, if he fails to act, are [sic] subject to the citizen suit and penalty provisions of section 7002. To assure that there is no confusion as to this, the amendments to section 7002 continue to use the current statutory language to specifically authorize a suit against 'any person, including the United States ...'.

Plaintiff asserts that, although this report refers to an unrelated section of the RCRA, it reflects Congress' intent to authorize civil penalties under section 7002.

Defendant argues that because waivers of sovereign immunity must be strictly construed, courts may not imply such waivers from the plain language of section 6001. It asserts that the term "requirement" does not normally include penalties or injunctions, and that the specific inclusion of injunctions in section 6001 only makes the absence of civil penalties more significant. Defendant also states that post-hoc legislative history cannot describe the views of a previous Congress with any accuracy. Finally, defendant argues that even if "sanctions" may be interpreted to include civil penalties, under the plain language of section 6001 they may be imposed only to enforce an injunction.

With regard to section 7002, defendant states that it provides authority for imposition of any appropriate civil penalty against "any person" under RCRA §§ 3008(a) and (g). Defendant asserts that the definition of "person" in the RCRA does not include the United States. RCRA § 1004(15), 42 U.S.C. § 6903(15).

## IV.

■ Few Courts have considered the issue of sovereign immunity from civil penalties in the context of the RCRA. In *Meyer v. United States Coast Guard,* 644 F.Supp. 221 (E.D.N.C.1986), the language and legislative history of RCRA § 6001 were found inadequate to waive sovereign immunity for civil penalties. The *Meyer* court specifically relied on two cases which did not involve government immunity from civil penalties, *People of the State of Cal. v. Walters,* 751 F.2d 977 (9th Cir.1984) (per curiam) and *State of Fla. Dep't of Envtl. Regulation v. Silvex Corp.,* 606 F.Supp. 159 (M.D.Fla.1985). *Walters* has been cited as the leading case on waiver under section 6001. It specifically held that criminal sanctions are not a "requirement" within the meaning of section 6001, but are the means by which requirements are enforced. *Walters,* 751 F.2d at 978. These cases were cited in *Meyer* as support for a "restrictive" interpretation of the waiver of sovereign immunity in section 6001.

The court in *McClellan Ecological Seepage Situation v. Weinberger,* 655 F.Supp. 601 (E.D.Cal.1986) (hereinafter *MESS*) found *Meyer* instructive, and likewise determined that section 6001 does not effectuate a waiver of immunity. The court stated that "RCRA § 6001 on its face does not provide clearly and succinctly for a waiver of sovereign immunity for civil penalties, and none will be implied." *MESS,* 655 F.Supp. at 603.

In *United States of America v. State of Washington,* C–87–291–AAM (E.D.Wash. Jan. 22, 1988), the court relied on *Walters, Meyer,* and *MESS* in concluding that RCRA § 6001 does not waive the government's immunity from state civil penalties. The *Washington* court explicitly accepted the *Walters* distinction between "requirements" and the means by which requirements are enforced. *Washington,* slip op. at 4. The court further found that no waiver was evident on the face of the statute, and that none could be implied from its ambiguous legislative history. Accordingly, the court granted the government's motion for summary judgment.

Conversely, United States Magistrate Hornby has issued a "Recommended Decision on Defendant's Motion for Partial Summary Judgment," concluding that section 6001 permits the recovery of civil penalties by a state administrative agency against the federal government. *State of Maine v. Department of the Navy,* 86–211 P, (D.Me.Nov. 16, 1987) (unpublished). The district court has not yet ruled on the issue. The Magistrate found that "the plain language of the statute with the ordinary implications a reader would draw meets the Supreme Court's requirement that Congress plainly manifest its intent to waive sovereign immunity." *Maine,* slip op. at 11. Magistrate Hornby specifically noted that the parenthetical language in section 6001, beginning with "including," clearly does not constitute a complete list of waivers. *Id.* at 12. He also disagreed with the Ninth Circuit's distinction between requirements and enforcement devices, claiming that the creation of a sovereign immunity category of enforcement devices contradicts the Supreme Court's analysis in *Hancock v. Train. Id.* at 7 n. 5.

We conclude that the Magistrate's analysis of *Walters* and *Hancock* is correct. The *Hancock* court considered the permit requirement an enforcement device, characterizing it as procedural in nature. *Hancock,* 426 U.S. at 183, 96 S.Ct. at 2014. The court went on to distinguish between procedural and substantive requirements, holding that Congress intended to subject federal facilities only to substantive state standards. In response to this determination, Congress amended the RCRA to include "all Federal, State, interstate, and local requirements, both substantive and procedural...." RCRA § 6001, 42 U.S.C. § 6961. Despite this Congressional mandate, the Ninth Circuit Court of Appeals in *Walters* held that section 6001 does not waive sovereign immunity to state imposition of criminal sanctions because such sanctions are enforcement devices rather than a "substantive or procedural requirement." *Walters,* 751 F.2d at 978. We decline to follow the reasoning of *Walters* and its progeny.

The relevant language of section 6001 provides that each "agency ... having jurisdiction over any solid waste management facility ... shall be subject to, and comply with, all ... state ... requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief)...." Other courts have concluded from the face of this legislation that it was not intended to waive sovereign immunity to civil penalties. *MESS,* 655 F.Supp. at 604; *Meyer,* 644 F.Supp. at 222–23. We cannot agree, particularly given the context of this section's amendment. Section 6001 was altered in response to the *Hancock* and *State Water Resources Control Board* decisions, which held that Congress did not waive immunity as to procedural (including enforcement) requirements. Congress could compel a different result only by expressly including state procedural requirements (and thereby enforcement devices) in the waiver provisions of the RCRA. The legislature elected to do so, making federal agencies subject to all state requirements, both substantive and procedural. RCRA § 6001, 42 U.S.C. § 6961.

Had Congress intended only to reverse the results of *Hancock* and *State Water Resources Control Board,* it could have added parenthetical language waiving sovereign immunity as to state requirements for permits but leaving section 6001 intact in all other respects. Because it instead subjected federal agencies to *all* state requirements, the parenthetical language in the current version of section 6001 cannot constitute a complete list of waivers.[2] This conclusion is reinforced by the structure of the parenthetical list; it begins with the word "including" rather than with a word of limitation. Thus, Congress's failure to list civil penalties in the parenthetical cannot support the negative inference that it did not intend to waive the government's immunity to such penalties.[3]

Based on the context in which section 6001 was amended by Congress, and the language of that amendment, the Court concludes that Congress intended to waive sovereign immunity to civil penalties under the RCRA.

## V.

■ Plaintiff has pleaded federal violation of the Ohio Solid Waste Disposal Act, Ohio Rev.Code Ann. §§ 3734.01 *et seq.,* with particularity. If it can prove facts supporting these claims, it may recover. Accordingly, defendant's motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., must be denied. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976).

## VI.

Section 313 of the Clean Water Act provides in pertinent part that:

[e]ach department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof

---

**2.** Plaintiff cites the following examples of essential procedural requirements not contained in the parenthetical list: completion of manifests to identify hazardous waste being transported by truck (40 CFR 262.23, O.A.C. 3745–52–23), writing contingency plans to prepare hazardous waste facilities for fires, explosions, and other hazardous waste emergencies (40 C.F.R. 264.51, O.A.C. 3745–54–51), planning for safe closure of hazardous waste after use (40 CFR 264.112, O.A.C. 3745–55–12), and keeping an operating log to record locations of hazardous waste (40 CFR 264.73, O.A.C. 3745–54–73).

**3.** Nor can the subsequent statement—"[n]either the United States, nor any agent, employee, or

officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of any such injunctive relief"—support an inference that exemption exists as to everything else. *See Maine,* slip op. at 12 n. 7. Although we admit that the comment is somewhat repetitive under our analysis of the preceding language, such repetition does not mandate a different conclusion. The opposite result is illogical rather than simply repetitive. It requires that we do not assign to the words "all" and "including" their recognized meanings.

in the performance of his official duties, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.... No officer, agent, or employee of the United States shall be personally liable for any civil penalty arising from the performance of his official duties, for which he is not otherwise liable, and *the United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court.*

33 U.S.C. § 1323(a) (emphasis added).

Congress enacted the CWA in this form one year after the Supreme Court issued *Hancock* and *State Water Resources Control Board.* It was the last environmental statute to be amended in response to these decisions, and is the only act of the four to refer specifically to the United States' liability for civil penalties.

4. CWA § 505(a) provides in part that:
   [e]xcept as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
   (1) against *any person (including (i) the United States ...)* who is alleged to be in violation of (A) an effluent standard or limitation under this Act ...
   The district courts shall have jurisdiction ... to enforce such an effluent standard or limita-

## VII.

■ Plaintiff argues that federal agencies and officers are subject to state civil penalties because such penalties are "sanctions" within the meaning of the Act. According to plaintiff, the section then modifies this broad waiver by limiting the United States' liability for civil penalties to those arising under Federal law or those imposed by a State or local court to enforce an order or the process of such court. CWA § 313, 33 U.S.C. § 1323. Ohio contends that the civil penalties imposed under the state-administered National Pollutant Discharge Elimination System (NPDES) arise under federal law because they were imposed for violations of a permit issued by the United States Environmental Protection Agency (EPA) pursuant to 33 U.S.C. § 1342 and transferred to Ohio Environmental Protection Agency administration. Finally, plaintiff argues that the citizen suit provision of the CWA authorizes civil penalties for violations of the Act.[4]

Defendant argues that civil penalties are not expressly included in the term "sanction," and that no such interpretation may be implied. The DOE further states that even if civil penalties are available for violation of federal law, the EPA's approval of a state program does not convert the penalty provisions of state law into federal law. In addition, defendant asserts that the citizen suit provision of the CWA does not authorize the assessment of civil penalties against the United States.

## VIII.

The only case directly examining CWA § 313(a) for waiver of sovereign immunity is *MESS*, 655 F.Supp. 601 (E.D.Cal.1986). The *MESS* court labeled CWA § 313(a) a "compilation of ambiguity," noting that the language of the Act seems to prohibit ap-

tion ... and *to apply any appropriate civil penalties under section 309(d) of this Act.* [33 U.S.C. 1319].
33 U.S.C. § 1365 (emphasis added).
Section 309(d) provides that any "person" who violates certain requirements of the CWA is subject to civil penalties. Defendant states that the definition of "person" in the CWA does not include the United States. *See* CWA § 502(5), 33 U.S.C. § 1362(5).

plication of civil penalties under state or local laws that are exact duplicates of enforceable CWA penalty provisions. *MESS,* 655 F.Supp. at 604. The court called such a result an "absurdity," but nonetheless found that the plaintiff had not demonstrated waiver of sovereign immunity. *Id.* at 605. It is not clear from the *MESS* opinion whether the Court considered an argument that civil penalties imposed under the state-administered NPDES arise under federal law. We believe that this is the primary issue confronting this Court in terms of waiver of immunity under the CWA.

The National Pollutant Discharge Elimination System (NPDES) authorizes the Administrator of the EPA to issue a permit for the discharge of pollutants into navigable waters. 33 U.S.C. § 1342(a)(1). The Administrator's permit program is subject to the same terms, conditions and requirements as apply to a State permit program under this section. 33 U.S.C. § 1342(a)(3). A State may submit a proposed permit program to the Administrator, who will approve the program unless he or she determines that the State lacks authority to administer it. 33 U.S.C. § 1342(b). Among other things, the State must have authority to abate violations of the permit or the permit program through imposition of civil and criminal penalties and other ways and means of enforcement. 33 U.S.C. § 1342(b)(7). If the State program is approved, the Federal permit program must be withdrawn. 33 U.S.C. § 1342(c)(1). The State program must then be administered in accordance with Federal guidelines. 33 U.S.C. § 1342(c)(2).

Defendant argues that once a state is authorized to administer its own NPDES permit program, the program is operated by the state under state, not federal, law. It asserts that the Administrator's approval of a state program does not convert the penalty provisions of state law into federal law. However, section 313(a) does not require such a conversion. Rather, it imposes liability on the United States for civil penalties "arising under" Federal law. The state program insures compliance with the pollution prevention standards defined by the Act. Compliance with a state permit is deemed compliance with the CWA. 33 U.S.C. § 1342(k). Under these circumstances, we find that civil penalties imposed under the state program "arise under Federal law." Accordingly, the Court concludes that Congress intended to waive sovereign immunity to civil penalties under the CWA.

### IX.

■ Plaintiff has pleaded federal violation of the Ohio Water Pollution Control Act, Ohio Rev.Code Ann. ch. 6111, with particularity. If it can prove facts supporting these claims, it may recover. Accordingly, defendant's motion to dismiss the CWA claims under Rule 12(b)(6), Fed.R. Civ.P., must also be denied. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102; *Westlake,* 537 F.2d at 858.

### X.

The Court concludes that Congress intended to waive sovereign immunity to civil claims under both the RCRA and the CWA. The plaintiff has pleaded its state claims with sufficient particularity. Therefore, we find that this Court has the authority to impose civil penalties on the Department of Energy, and that, if violations are proven, the State may recover such penalties. Accordingly, it is Ordered that defendant's motion to dismiss is denied.

SO ORDERED.